[Cite as *In re W.H.*, 2022-Ohio-121.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

W.H.

K.H.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Earle E. Wise, Jr., J.

Case Nos. 21 CA 000022 and
21 CA 000023

O P I N I O N

CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 19 JC 00057

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     January 19, 2022

APPEARANCES:

For Appellee

MELISSA M. WILSON
1009 Steubenville Avenue
Cambridge, Ohio 43725

Guardian ad Litem - Mother

ERIK STEWART
555 City Park Avenue
Columbus, Ohio 43215

Guardian ad Litem
RUTHELLEN WEAVER
542 Drexel Avenue
Columbus, Ohio 43209

CASA
CHERYL GADD
801 Wheeling Avenue
Cambridge, Ohio 43725

For Appellant Mother

ANDREW E. RUSS
PO Box 520
Pickerington, Ohio 43147

For Father

TARA TIMBERLAKE
122 South Wooster Avenue
Strasburg, Ohio 44680

For Children
JEANETTE MOLL
803 Market Avenue
Zanesville, Ohio 43701

*Wise, John, J.*

{¶1}    Appellant-Mother J.L. appeals from the August 4, 2021, decision of the Guernsey County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, W.H. and K.H., to Appellee Guernsey County Children Services.

{¶2}    These cases come to us on the expedited calendar and shall be considered in compliance with App.R. 11.2(C).

                    <u>STATEMENT OF THE FACTS AND CASE</u>

{¶3}    Appellant-Mother J.L. and Father A.H. are the biological parents of minor children W.H. and K.H.

{¶4}    On May 23, 2019, the children were adjudicated Neglected (R.C. §2151.03(c)) and Dependent (R.C. §2151.04(c)) children following a two-day trial which began on May 2, 2019. The minor children were placed into the Temporary Custody of Guernsey County Children's Services (GCCS).

{¶5}    Prior to the Adjudicatory Hearing, the children had been in the Temporary Custody of GCCS since February 11, 2019, from an *Ex parte* Order issued from the trial court.

{¶6}    At all times since February 11, 2019, prior to the custody hearing in this matter, K.H. has been in the Temporary Custody of GCCS. The only exception is from August 19, 2019, until September 5, 2019, K.H. was in the Temporary Custody of Allen and Beth Larrick. On September 5, 2019, this placement was disrupted and K.H. was returned to the Temporary Custody of GCCS. W.H. was in the Temporary Custody of GCCS from February 11, 2019 until August 19, 2019. W.H. was then placed into the

Temporary Custody of Allen and Beth Larrick. W.H. has been in their Temporary Custody from August 19, 2019, until the date of the hearing.

{¶7} Neither parent has been able to care for the children, and there were no kinship placements available or appropriate for the minor children with the exception of Allen and Beth Larrick.

{¶8} On May 23 2019, and August 19, 2019, the trial court held Dispositional Hearings.

{¶9} On November 15, 2019, the trial court held a Review Hearing.

{¶10} On October 5, 2020, the trial court held a Review Hearing.

{¶11} On March 2, 2020, the court held an Annual Review Hearing.

{¶12} On October 30, 2020, the court held another Review Hearing.

{¶13} On February 8, 2021, GCCS filed its Motion to Modify Dispositional Orders to that of Permanent Custody.

{¶14} At the time of the hearing, the trial court noted that Appellant-Mother was currently under Indictment in Guernsey County Common Pleas Court, Criminal Division, Case No. 20CR00021 from an incident involving the two Guernsey County Children Services Caseworkers related to this pending case. In an entry from that court on June 8, 2021, Appellant-Mother was found not competent to stand trial in her criminal case. Mother was ordered into the custody of the Guernsey County Sheriff to be transported to Appalachian Behavioral Healthcare for purposes of competency restoration based on an entry from that Court dated June 11, 2021. Based on this information, the trial court appointed a Guardian Ad Litem for Appellant-Mother.

{¶15} The hearing commenced on July 28, 2021, and continued on July 29, 2021.[1] Present at the hearing were: Atty. Wilson, counsel for GCCS; Angela Grywalsky, GCCS Supervisor; Father A.H.; Atty. Timberlake, counsel for father; Attorney Moll, counsel for the children W.H. and K.H.; Atty. Weaver, GAL; Attorney Stewart, GAL for the Appellant-Mother J.L.; Atty. Johnson, Counsel for Appellant-Mother J.L.; Appellant-Mother J.L., appearing via video from Appalachian Behavioral Healthcare; and Cheryl Gadd, CASA.

{¶16} The GAL for Appellant-Mother objected to her testifying or presenting testimony in a narrative form, arguing that based on her current mental status and having been found to be incompetent to stand trial, she could not knowingly and intelligently waive her Fifth Amendment Privilege against self-incrimination. The trial court sustained the objection and did not permit Mother to testify in this trial, thereby preserving her Fifth Amendment Privilege against self-incrimination relative to the pending criminal case.

{¶17} At the time of the permanent custody hearing, W.H. had been in the temporary custody of Allen and Beth Larrick since August 19, 2019. K.H. was in a foster placement and had been in four foster homes and one residential placement since February 11, 2019.

{¶18} Based on the testimony presented at the hearing, the trial court found that a legally secure permanent placement for K.H. could not be achieved without a grant of Permanent Custody to GCCS. The trial court based its decision on the following: the inability of the mother to parent the child; lack of progress in working the case plan by

---

[1] The trial court also considered the following motions at the July 28-29, 2021, hearing: Motion for Visitation by father filed November 5, 2020; Motion to Modify Disposition to Terminate case and return custody to Mother filed November 18, 2020; Motion for Legal Custody of W.H. to Kendyl and Dustin King filed February 12, 2021; and Motion for Legal Custody of W.H. and K.H. to father filed May 5, 2021.

the mother or father; lack of mental health medication or counseling for mother; lack of mental health counseling for father; lack of housing or economic resources by mother or father; lack of contact with the child by the father; ongoing criminal indictment and competency issues for mother; mental health issues for K.H. and her need for a stable environment; and the lack of desire by K.H. to be reunited with mother or father. Further, the general lack of cooperation with GCCS and general hostility by mother and father toward the Agency or other service providers and the lack of kinship placement were considered by the court.

{¶19} By Judgment Entry filed August 4, 2021, the trial court found:

GCCS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for K.H. to return home safely to the home of Appellant-Mother due to mother's inability to cooperate with service providers or make a parental commitment to the child as noted above. The Court finds that GCCS has made reasonable efforts to make a permanency plan for K.H. by establishing a safe, stable, and secure foster placement. (JE at 20-21).

{¶20} The trial court found that it was in the best interest of K.H. to terminate the parental rights of Appellant-Mother and Father and ordered K.H. committed to the Permanent Custody of GCCS.

{¶21} The trial court also granted the Motion of W.H. to be placed in the legal custody of Kendyl and Dustin King stating that it was in the child's best interest to grant said legal custody based on the same reasons as set forth above.

**{¶22}** Appellant-Mother filed the instant appeals as to the trial court's decision as to K.H., and this matter is now before this court for consideration.

<u>ASSIGNMENT OF ERROR</u>

**{¶23}** "I. THE TRIAL COURT'S JUDGMENT GRANTING PERMANENT COURT COMMITMENT OF THE MINOR CHILDREN TO GUERNSEY COUNTY CHILDREN'S SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

**{¶24}** Appellant-Mother argues the trial court's decision granting permanent custody of K.H. was against the manifest weight of the evidence. We disagree.

**{¶25}** Specifically, Mother argues the trial court did not fully consider the Appellant's progress on her portion of the case plan.

**{¶26}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equipment Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶27}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St .3d 415, 419, 674 N.E.2d 1159 (1997).

{¶28} R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶29} Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶30} In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as

expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶31}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶32}** In this case, the trial court found that the statutory requirements of R.C. §2151.414(B)(1)(a) and (d) had been met. The court found by clear and convincing evidence that K.H. had been in the Temporary Custody of GCCS from February 11, 2019, to August 19, 2019 and then continuously from September 5, 2019 until July 28, 2021, the date of the permanent custody hearing. The court then further found, by clear and convincing evidence, that K.H. cannot be placed with either of the parents within a reasonable time or should not be placed with the parents.

**{¶33}** Appellant-Mother does not challenge the trial court's finding. This finding alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

**{¶34}** The trial court found the minor children in this case could not be placed with Appellant-Mother or Father within a reasonable time or should not be placed with either parent. If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be

placed with the parents. Under R.C. §2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. §2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶35}** Here, the trial court found that notwithstanding the reasonable case planning and diligent efforts of GCCS to assist Mother to remedy the problems that initially caused the children to be placed outside the home, Appellant-Mother, and Father, have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside of the home. R.C. §2151.414(E)(1).

**{¶36}** The trial court found that Appellant-Mother has failed to follow her case plan. Mother was to provide safe, stable, and appropriate housing, but she failed to pay her rent and was evicted from the trailer where she had been living. The court found that Mother is currently residing at Appalachian Behavioral Healthcare.

**{¶37}** Mother's case plan also required that she obtain enough economic resources to meet K.H. and W.H. 's basic needs. Mother received $250.00 per month for child support for her oldest child. She was not employed during this entire case.

**{¶38}** Mother was also to ensure that K.H. and W.H. were enrolled and attending school. The trial court did not measure this finding due to the fact that both children were not in her home during the period of this case.

**{¶39}** Mother was to complete a mental health assessment and follow all recommendations. The court found that Mother's mental health has deteriorated over the course of this case. She was attending mental health services at Mid-Ohio prior to GCCS

involvement. She has several diagnosis including PSTD, Major Depressive Disorder, OCD and Bipolar Disorder. She has been prescribed meds but has been mostly noncompliant. There was a period during this case when she was med complaint and appeared to be improving. However, caseworkers would visit her home and note full bottles and half full bottles of medication. Mother would indicate she only would take half doses or none altogether. The court found that when Mother is non-compliant with mental health services she would become erratic and paranoid. She becomes rambling in her speech and hard to redirect in conversations. She has paranoid ideations concerning the government and that her children are involved in some form of child trafficking. She claims that all of these proceedings are unconstitutional and void from the beginning.

**{¶40}** Mother was also to complete a parenting course, which she did complete through Creative Options in May, 2019.

**{¶41}** Mother was to complete a parenting assessment and a psychological assessment and follow all recommendations. Mother completed the assessment through Dr. Amy Thomas. Dr. Thomas recommended continued psychological counseling and medication management. This has not been done as noted above. While Mother has in the past been counseled for her mental health, she is non-compliant with medication.

**{¶42}** Family Counseling was also recommended. However, Mother could not get her own mental health under control in order to proceed with family counseling. Mother did work with the Staff there for a short period of time. However, Mother's behavior began to deteriorate and would become erratic and threatening.

**{¶43}** Mother was to sign all releases of information for the Agency. The caseworkers expressed that this has been a struggle.

**{¶44}** The court found that Mother has not visited with K.H. since the summer of 2020. Mother last visited with W.H. in February, 2021. The Agency arranged for Mother to Facetime and/or call the children if they would like that contact. Both children are declining contact with their mother at this time predominantly because of Mother's behavior. Mother has made posts on social media claiming her children have been kidnapped, and this embarrasses both of the children. The children see this because they are tagged in her posts.

**{¶45}** With regard to the Father, the trial court also found the he has not followed his case plan. Father is remarried and has three other children in that home. Father's work situation over the past two years has been sporadic. Father owes approximately $2,000.00 dollars in back child support. However, at one point he owed over $50,000.00 in back support. Pursuant to the CASA's report father's current wife has indicated that they do not have enough money to care for two more children in their home.

**{¶46}** Father was to resolve his legal issues regarding a protection order that was in place with the children resulting from a domestic violence incident which took place in Texas when he and Appellant-Mother lived there between 2010 to 2012. In 2017, Mother renewed the CPO with the Guernsey County Common Pleas Court.

**{¶47}** Father was to have a mental health assessment and follow all recommendations. Father was attending counseling in New Philadelphia. He quit going to counseling and has refused efforts by the Agency for him to return to counseling.

**{¶48}** Father was also required to complete a parenting course. This has not been done. Father was to sign releases of information and cooperate with the Agency. Father has signed releases of information and cooperates with the Agency until he hears

something he does not like. Testimony was provided that Father has become aggressive, loud, and argumentative with the Agency on several occasions. The Agency will no longer do home visits with Father, as they are fearful of their safety when he became angered. The Agency has had to end a telephone conference with father when he became belligerent with the caseworker.

**{¶49}** Finally, both children have indicated that they do not wish to visit with their Father or have a relationship with him.

**{¶50}** Based on the foregoing, we find the "first prong" burden as required by R.C. §2151.414(B)(1)(a) and (d) has been met.

*Best Interests*

**{¶51}** We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

**{¶52}** In this case, the trial court determined it was in the best interest of K.H. to be placed in the permanent custody of GCCS pursuant to R.C. §2151.414(D), and we agree.

**{¶53}** The trial court found Mother's relationship with K.H. is problematic. K.H. has indicated to the CASA that she doesn't believe her mother ever loved her. She indicated Mother would bring strange men around her, and that her family is "crazy" in that they all

fight and scream at each other, sometimes violently. K.H. is in a therapeutic foster home after being in four other placements. Unfortunately, she was abused in one of the placements, further adding to her ongoing trauma.

{¶54} The court found that K.H. and W.H. do not appear to be especially close. There was some testimony and reports that K.H. can be aggressive with W.H. which has strained their relationship. W.H., at this time, does not wish contact with K.H.

{¶55} K.H. does have a close and bonded relationship with her current foster mother, Shawna Goines. Ms. Goines had K.H. in her home from July 9, 2020, to October 15, 2020, and then again from March, 2021, until the date of the hearing. K.H. was at Fox Run Hospital from October 2020 until March of 2021 for mental health concerns. She appears to be doing much better in Ms. Goines home at this time and is currently not taking any medication.

{¶56} K.H. has been in multiple placements since removal but appears to have settled in with Ms. Goines. The court found that the child has been in foster care 898 days and deserves stability. She has indicated that she does not wish to go back with her mother, nor does she wish to see her father whom she has not seen in nine (9) years. She appears happy in her current placement.

{¶57} There have been several kinship options explored by the Agency. None have been found to be appropriate and/or interested.

{¶58} The custodial history of the child has been that she has been in the Temporary Custody of GCCS since February 11, 2019 until August 19, 2019 and then from September 5, 2019 until the date of the hearing.

**{¶59}** Based on the foregoing, we find that the trial court's decision finding that K.H. could not or should not be placed with Appellant-Mother or Father within a reasonable period of time was not against the manifest weight of the evidence and that the grant of permanent custody to the Agency was in the child's best interest.

**{¶60}** Appellant-Mother's sole Assignment of Error is overruled.

**{¶61}** The judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is hereby affirmed.

By: Wise, John, J.

Gwin, P. J., and

Wise, Earle, J., concur.

JWW/kw 0113